UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

VINCENT SHIDER,

                        Plaintiff,

        v.

ALLIED UNIVERSAL SECURITY CO.,

                        Defendant.

**MEMORANDUM AND ORDER**
21-CV-6425 (LDH) (LB)

---

LaSHANN DeARCY HALL, United States District Judge:

      Vincent Shider ("Plaintiff"), proceeding pro se, brings suit against Allied Universal Security Co. ("Defendant"), alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of Plaintiff's ADA claims.

### BACKGROUND[1]

      Plaintiff became employed by Defendant as a security officer on October 16, 2006. (Compl. at 15, ECF No. 1.[2]) Plaintiff was subsequently diagnosed with cancer in either May or June of 2019 (*id.* at 44), after which Plaintiff took medical leave until his benefits expired on September 30, 2020. (*See id.* at 39–40.)

      Plaintiff received a letter dated April 13, 2020 from Darryl Johnson, Defendant's director of operations and human resources, stating that Plaintiff's last day of work was March 26, 2020.

---

[1] The following facts taken from the complaint (ECF No. 1) are assumed true for the purpose of this memorandum and order.

[2] Citations to the complaint are made to the ECF page numbers.

(*Id.* at 15.)  In a subsequent conversation, Johnson advised Plaintiff that Plaintiff could quit and be rehired, take a 30-day leave of absence, or take temporary disability.  (*Id.*)  Plaintiff opted for temporary disability.  (*Id.* at 16.)  Thereafter, on an unspecified date, Plaintiff received a letter dated June 30, 2020, advising that Plaintiff "was separated from Company."  (*Id.*)  On July 6, 2020, Plaintiff discussed the errant letter with Ms. Spencer,³ Defendant's director of human resources, and she advised that she would look into the error.  (*Id.*)  The same day, Ms. Spencer emailed Defendant's "Leave of Absence Specialist" advising that Plaintiff "was inadvertently deactivated on June 24, 2020 and that a [leave of absence] request had already been generated for him."  (*Id.*)  Thereafter, the leave of absence specialist advised Plaintiff via email that "the request to have the 'inactive' line removed[] has been submitted and processed."  (*Id.*)  Subsequently, on July 13, 2020, Plaintiff attempted, but was unable, to contact Ms. Spencer.  (*Id.*)  Plaintiff left a voicemail.  (*Id.*)  That call was not returned.  Plaintiff again attempted to reach Spencer on September 14, 2020, and on October 14, 2020, to no avail.  (*Id.*)  Plaintiff's disability benefits ceased on September 30, 2020.  (*Id.*)  On December 14, 2020, Plaintiff filed an EEOC charge, which described the sequence of events detailed above and Defendant's failure to respond to Plaintiff, and asserted disability discrimination.

On January 11, 2021, Plaintiff emailed Linda Dean, a representative from the Leave of Absence Department, advising her that he would fax documents from his doctor concerning his ability to return to work ("Return-To-Work Documentation").⁴  (*Id.* at 43.)  In the same email, Plaintiff advised that he had previously submitted the Return-To-Work Documentation on September 16, 2020.  (*Id.*)  Apparently, Plaintiff did not hear again from Defendant until May

---

³ The complaint does not provide Ms. Spencer's first name.

⁴ Plaintiff's January 11, 2021 email references an email he received from Dean, but the complaint does not otherwise reference or provide a date on which that email was received.

2

29, 2021, when Joanne Pham emailed Plaintiff asking about his return-to-work date. (*Id.* at 22, 27.) Plaintiff responded that "due to the circumstances and the conditions I was subjected to I would feel very uncomfortable." (*Id.* at 63.) Plaintiff received another email on June 1, 2021, to which he responded that he would not return to work.[5] (*Id.* at 64.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

Moreover, where, as here, a plaintiff proceeds pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)).

---

[5] Plaintiff's June 2, 2021 email references an email he received from Pham, but the complaint does not otherwise reference or provide a date on which that email was received.

The Supreme Court has held, specifically in relation to a complaint filed pro se, that "[s]pecific facts are not necessary" to satisfy Rule 8, and that the complainant "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). The reason for this is plain, given that pro se complaints are "to be liberally construed," and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal citations omitted). Against this backdrop, the Second Circuit has held that "dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin*, 521 F.3d at 216.

## DISCUSSION

The ADA provides redress for individuals who suffered discrimination in employment; public services, programs, or activities; or public accommodations, on the basis of their disabilities. *See Mary Jo. C. v. New York State & Local Ret. Sys.,* 707 F.3d 144, 152 (2d Cir. 2013). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). Here, Plaintiff alleges Defendant failed to make a reasonable accommodation of his disability and discriminatorily discharged him.

A plaintiff pleading a claim for discrimination based upon a failure-to-accommodate theory must allege "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse employment action was imposed

because of her disability." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *18 (E.D.N.Y. Sept. 21, 2015) (citing *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013)). Particularly relevant here, "[t]he ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability to can be reasonably accommodated." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218 (2d Cir. 2001). Accordingly, an employer is liable under a failure-to-accommodate when it is "responsible for a breakdown in that process." *Goonan v. v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 480 (S.D.N.Y 2013) (citing *Thompson v. City of New York*, No. 03 Civ. 4182, 2006 WL 2457694, at *4 (S.D.N.Y. Aug. 10, 2006), *report and recommendation adopted*, 2006 WL 6357978 (S.D.N.Y. Sept. 11, 2006), *aff'd sub nom. Thompson v. N.Y.C. Dep't of Prob.*, 348 F. App'x 643 (2d Cir. 2009)). An employer impedes the interactive process "when: the employer knows of the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* (quoting *Bohen v. Potter*, No. 04-CV-1039, 2009 WL 791356, at *13 (W.D.N.Y. Mar. 23, 2009)).

Against that backdrop, and liberally construed, the complaint and supporting materials state a claim under the ADA for failure-to-accommodate. Plaintiff alleges that Defendant was on notice of his disability no later than April 2020. (*Id.* at 16.) Plaintiff's doctor's note dated September 18, 2020, supports the inference that Plaintiff could work with a reasonable accommodation as early as November 2020. (*Id.* at 22.) And, Plaintiff claims that he attempted to contact Defendant on July 13, 2020, September 14, 2020, September 16, 2020, and October

5

14, 2020, but he did not receive any sort of response. (*Id.*) In sum, Plaintiff plausibly alleged that Defendant was responsible for a breakdown in the interactive accommodation process.

Nevertheless, Defendant argues that Plaintiff has failed to state an ADA claim because he has not sufficiently pleaded a reasonable accommodation that would have permitted him to work. Specifically, Defendant argues that "an indefinite period of leave . . . is not a reasonable accommodation" and that Plaintiff "does not allege that [the Return-To-Work Documentation] was ever communicated to [Defendant]." (Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem.") at 7–8, ECF No. 12-1.) But, this is too narrow of a construction of Plaintiff's complaint. *First*, nowhere in the complaint does Plaintiff allege he sought an indefinite period of leave. *Second*, although Plaintiff may not have transmitted to Defendant the Return-To-Work Documentation, the complaint establishes that Plaintiff attempted to call Defendant less than one month after he received the Return-To-Work Documentation, on October 14, 2020. The Court can reasonably infer that Plaintiff sought in that call to discuss his ability to return to work. *Third*, Plaintiff plainly alleges that he attempted thrice to contact Defendant concerning his accommodation, and because Defendant never answered Plaintiff's calls, it cannot know at all what accommodation Plaintiff sought. In sum, Defendant's arguments are contradicted by the complaint and otherwise raise fact questions that cannot be resolved on a motion to dismiss. *See Solomon v. Cnty. of Nassau*, No. 20-CV-5227, 2021 WL 5631766, at *10 (E.D.N.Y. Dec. 1, 2021) (quoting *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 480 (S.D.N.Y 2013)) (denying motion to dismiss where there were "conflicting facts regarding whether Defendant engaged in an interactive process to accommodate [p]laintiff in a satisfactory manner").[6]

---

[6] Plaintiff's complaint is unlike *Vangas v. Montefiore Medical Center*, 823 F.3d 174 (2d Cir. 2016), relied upon by Defendant and decided after a trial, where the plaintiff testified that she "had no idea how long she would be out of work or how long it would take to determine how long she would be out of work." *Id.* at 181. Nor is Plaintiff's case like *Mitchell v. Washingtonville Central School District*, 190 F.3d 1 (2d Cir. 1999), also relied upon by Defendant

Defendant's argument that Plaintiff has not exhausted administrative remedies concerning his ability to return to work in November 2020 because he did not state that fact in his EEOC charge is unavailing. "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency.'" *Soule v. Conn., Dep't of Emergency Servs. & Pub. Protection*, 882 F.3d 52, 57 (2d Cir. 2018) (quoting *Shah v. N.Y. State Dep't of Civil Servs.*, 168 F.3d 610, 614 (2d Cir. 1999)). A claim is reasonably related if "the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination." *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)). To make this determination, the "focus should be on the factual allegations made in the [EEOC] charge itself" and whether Plaintiff "gave the [EEOC] adequate notice to investigate." *Williams v. N.Y.C. Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006). Here, Plaintiff's failure to accommodate claim is reasonably related to his EEOC charge because his EEOC charge raises Plaintiff's termination of disability benefits and Defendant's failure to respond to him concerning the same in October 2020. *See Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens*, No. 01-CV-326, 2003 WL 22019073, at * (E.D.N.Y. Aug. 26, 2003) (ADA retaliation claim reasonably related to failure to accommodate where "narrative description of . . . alleged wrongdoing could reasonably have prompted an investigation of retaliatory conduct"). Moreover, the Return-To-work Documentation was a part of the EEOC investigation. (Compl. at 48.) Under those circumstances, it cannot reasonably be asserted that the EEOC was not on notice of Plaintiff's ability to return to work in November 2020 or his complaint that Defendant refused to engage with him.

---

and decided after discovery, where the plaintiff "was totally disabled" and provided no indication that "he expected to be able to return [to work]." *Id.* at 9.

Finally, Defendant's argument that Plaintiff does not allege an actionable adverse employment action for the purpose of an intentional discrimination claim also fails. (*See* Def.'s Mem. at 8.) Termination of employment is a quintessential adverse employment action for purpose of an ADA claim. *See Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, at 263 (E.D.N.Y. 2015) ("'Examples of materially adverse employment actions include termination of employment . . .'" (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)). Constructive discharge likewise constitutes an adverse employment action. *Campbell v. N.Y.C. Transit Auth.*, 93 F. Supp. 3d 148, 170 (E.D.N.Y. 2015) ("A constructive discharge is functionally the same as an actual termination and therefore is considered an adverse employment action." (quotation marks and citation omitted)). And, broadly construed, and in light of the foregoing, Plaintiff's documentation creates a reasonable inference that Defendant terminated Plaintiff as early as October 1, 2020, when he ceased receiving disability benefits. Defendant's argument that it "would allow [Plaintiff] to return to work when medically able, as he alleges that in May and June 2021, two different [Defendant] representatives inquired as to his ability to return to work" is unavailing. The complaint establishes that Plaintiff attempted to return to work months before May and June 2021, and Defendant did not respond. Accordingly, Plaintiff sufficiently pleaded an adverse employment action for the purpose of his ADA intentional discrimination claim. *See Dossous v. N.Y.C. Health & Hosps.*, No. 19-CV-3098, 2020 WL 5752175, at *2–3 (E.D.N.Y. Sept. 25, 2020) (discrimination based on termination survived Rule 12(b)(6) dismissal where plaintiff alleged that "[d]efendant engaged in an adverse employment action when it terminated him" and that "he was terminated as a result of his back injury, and that [d]efendant refused to provide any accommodation").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's ADA claims is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  
       March 27, 2023

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge